PATRICK CASEY, APPELLANT, *v.* THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT.

*Criminal trial — insanity — what is the legal test thereof — burden of proving it — jurors — duty of, to agree upon a verdict — how far they are to be influenced by the opinion of fellow-jurors.*

The test of responsibility for criminal acts, where insanity is asserted, is the capacity of the accused to distinguish between right and wrong at the time and with respect to the act, which is the subject of inquiry, and the absence of insane delusions respecting the same.

Upon the trial of the defendant for murder in the first degree his counsel requested the court to charge, "that upon an interposition of the defense of insanity, and testimony deduced in support of the plea, the presumption of sanity in the accused is *prima facie* overcome, and the people before there can be a conviction must satisfy the jury, by affirmative proof of saneness, that the accused was not mentally diseased at the time of the shooting." The court said: "I will not charge that, and I make this explanation about it, that the rule as to sanity which governs the presumption is that every man is presumed to be sane, and that when a defendant accused of crime avers the plea in his protection he must prove it, it is his issue. But if, on the whole proof, there is a reasonable doubt of sanity you will give the prisoner the benefit of that doubt upon that issue as upon any other."

*Held*, no error.

The counsel for the defendant requested the court to charge, that to meet the requirements of the law and of justice the verdict must be the result of twelve individual judgments, uninfluenced by the separate judgment of any one or more of the persons composing the jury; and again, that it was the duty of the jurors to disagree if upon the evidence in the case each of them for himself, uninfluenced by the judgment of the others, had any reasonable doubt of the guilt of the accused. The court charged, "they have to make up a verdict as to which they all agree. I will say nothing more," and declined to charge further.

*Held*, no error.

APPEAL from a judgment of the Court of Oyer and Terminer of Queens county, convicting the defendant of murder in the first degree.

*James W. Covert*, for the appellant.

*Benjamin W. Downing*, district attorney, for the people.

Dykman, J. :

The defendant was tried for the crime of murder in the first degree and convicted of that offense, and this is an appeal from the judgment of conviction. The defendant and his victim, Richard Conisky, were both members of the police force of Long Island City, and, on the morning of the homicide, he came to the station-house from his duty and went into the back room. There he called a brother officer and requested him to fix a revolver which he had in his hand. There was then one ball cartridge in the chamber; after it was put in order, it was returned to the defendant, who inserted two more balls in the chambers. Then he returned to the front room, where the deceased was sitting, and asked him why he was following him around nights, and the deceased said " to make you do your duty." The defendant then said to him " well, I will kill you dead," and immediately discharged the pistol once. The ball passed through his brain, and caused his instant death. When asked why he did it, he said he could not help it, that the deceased had been following him around, and, in reply to some other remark, he said " well, it can't be helped now, it is done." This transpired in presence of two other police officers.

Insanity was interposed on the trial for a defense, and many witnesses were examined on the subject. The jury rejected the plea, and found the defendant guilty of the crime.

There was no controversy respecting the main facts. The two officers who witnessed the fatal shot were examined, and gave a circumstantial account of the occurrence, and their testimony was in no wise contradicted.

There were very few exceptions taken on the trial, and none of them present any serious questions. Some exceptions were taken to the charge of the court to the jury, which call for examination. This was said: " The test of responsibility for criminal acts, where insanity is asserted, is the capacity of the accused to distinguish between right and wrong at the time, and with respect to the act which is the subject of inquiry, that is the test of insanity. * * * But if he knew the effect of his acts, if he knew that it was wrong to kill, and that he was liable to punishment for it, he is responsible to punishment, although he may have had insane delusions." At the close of the charge, the counsel for the defendant said : " If

your honor please, I desire formally to except to that part of the charge coming from the court to the jury, in which this idea is involved — the power to distinguish between right and wrong is the sole test of responsibility. I also except to this other part of the charge of the court — if the defendant knew it was wrong to shoot he would be guilty even though he had insane delusions." The Court : ." I do not say that, I did not mean that he must have insane delusions in respect to the act, I say that if he knew right from wrong in respect to the act done, at the time it was done, then he is amenable to punishment. If there has crept into the charge any such expression as that he is responsible even though he had insane delusions with respect to the act, I do not intend to say so, and I do not think I have said it." Counsel for the defendant : " I will have this entered on the minutes, so that if it has crept into the charge I may have the benefit of any ill effect that it may have had with the jury. 'If he knew right from wrong, he was guilty, even though he had insane delusions.' "

It thus appears that if the charge as given respecting the possession of insane delusions by the accused was erroneous, it was cured by the modification and explanation, but the test of responsibility laid down was also the subject of exception, and must be examined.

The schoolmen of medical science, versed in the intricacies of mental unsoundness and disorder, claim that in addition to mental capacity sufficient to distinguish between right and wrong in relation to the act committed, juries in criminal cases where insanity is interposed as a defense should be instructed to require a mind with power to control itself in action before they will convict of crime. They claim that there is often found a state of mental disorder in which the will cannot act, although the perception be perfect, that knowledge of right and wrong may be perfect, while the power to choose may be paralyzed ; and that when such a state of mind has resulted from permanent disorder, its possessor is not an accountable being.

This doctrine, however, has attained no permanent place in the field of jurisprudence. In this State the test of responsibility is the capacity to distinguish between right and wrong at the time the act was committed and in respect thereto ; and the law as administered here in criminal cases does not find irresponsibility where the

claim is that capacity to distinguish right from wrong exists without the power to choose between them.   (*Flanagan* v. *The People*, 52 N. Y., 467.)

The law imposes on all persons the duty to control their will power and resist evil influences and desires to perpetrate wrongs and commit crimes; and they cannot secure immunity from punishment by permitting their will to pass beyond their control by the violence of frenzy or the paroxysm of rage.   If they have capacity and understanding to know that the act they are about to commit is forbidden by the laws of God and man, they must be held responsible.   Human life would be very insecure under any other rule of law, for anger and a desire for revenge may unseat the reason of a man perfectly sane and cause him for a time to lose all control of his conduct or his will.   The charge of the court in this case was therefore a correct exposition of the law on the subject, and the exception thereto is unavailing.

The counsel for the defendant requested the court to charge the jury : " That upon an interposition of the defense of insanity and testimony deduced in support of the plea, the presumption of sanity in the accused is, *prima facie*, overcome, and the People, before there can be a conviction, must satisfy the jury by affirmative proof of saneness that the accused was not mentally diseased at the time of the shooting."   The court: " I will not charge that, and I make this explanation about it, that the rule as to sanity which governs the presumption is that every man is presumed to be sane, and that when a defendant accused of crime avers the plea in his protection, he must prove it — it is his issue.   But if on the whole proof there is a reasonable doubt of sanity, you will give the prisoner the benefit of that doubt upon that issue as upon any other."   The counsel for the defendant: " I except to the declination to charge expressly as requested in this proposition, and to the charge as given on that point."

Neither of these exceptions are well taken.   While the utter irresponsibility of a mad man, or a man who lacks sound memory, is recognized by our statute as well as by the common law, yet the legal presumption is in all cases that every man is sane, because sanity is the normal condition of men.   The defense of insanity is an affirmative defense to be established by the accused.   It is true .

that on the interposition of the defense of insanity the question was
in the case and the burden was on the prosecutor to show that the
crime charged was committed by the defendant, and that he was at
the time of its commission in a condition of mind to be responsible
therefor. On the first point affirmative proof was necessary in the
first instance but not on the second, because the presumption of
sanity rendered it unnecessary and cast the burden of proof on the
defendant, that is to say, the legal presumption of sanity was suffi-
cient, until repelled, to establish the sanity of the defendant. If no
evidence was adduced by the accused to establish his defense it
failed. If he did produce such proof, then the burden was again on
the public prosecutor to satisfy the jury on the whole evidence of
the sanity and responsibility of the defendant. (*O'Connell* v. *The
People*, 87 N. Y., 380; *Brotherton* v. *The People*, 75 id., 159.)
These rules were not violated by this charge, because the jury
was told that if on the whole proof there was a reasonable doubt of
sanity the defendant must have the benefit of that doubt upon that
issue as upon any other.

Counsel for the defendant asked the court to charge specifi-
cally that if the jurors have, or any of the jurors has, a
reasonable doubt as to the sanity of the accused at the very
time of the shooting, the accused is entitled to the benefit of that
doubt; and if the doubt is shared by all the twelve there should be
a verdict of acquittal, and if the doubt is held by one or more of the
jurors there should be a disagreement. This was refused, except as
charged, and the defendant excepted. This refusal must be sus-
tained. It was not the duty of the court to charge the jury that
there should be a disagreement in any emergency, and the other
portion of the request had been substantially charged before.

Again, the counsel for the defendant requested the court to charge
yes or no to this: That to meet the requirements of the law and of
justice the verdict must be the result of twelve individual judg-
ments, uninfluenced by the separate judgment of any one or more
of the persons composing the jury. The court: " They have to make
up a verdict as to which they all agree. I will say nothing more."
To this there was an exception which cannot be sustained.

Another request to charge was as follows : That it was the duty
of jurors to disagree if, upon the evidence in the case, each of them

for himself, uninfluenced by the judgment of the others, has any reasonable doubt of the guilt of the accused. This was declined except as charged, and the defendant excepted. In relation to these last two requests, it is sufficient to say that it was not the duty of the court to charge the jury that the individual judgment of a juror was to be uninfluenced by the judgment of his compeers, or that it was the duty of jurors to disagree if they had any doubt of the guilt of the accused on the evidence, or to resist the influence of the judgment of the other jurors. The law in no case contemplates the disagreement of a jury. On the contrary, it is the duty of jurors to agree if they can do so without the surrender of conscientious convictions. It is their duty to receive the law from the court and to examine and discuss the testimony with each other during their deliberation, to harmonize their views and reach a unanimous conclusion, if consonant with a proper sense of their judgment. The court did charge the jury on the request of the defendant, that if on the whole case there was a reasonable doubt, the defendant was entitled to the benefit of the doubt.

This examination of the legal questions involved closes with a conclusion adverse to the appellant. So, also, must the examination of the facts close with the same result. The act of the defendant which resulted in the death of his victim, was not the offspring of delusion or disease, or raving madness, and the testimony was sufficient to hold the defendant responsible for his act within the rule of legal responsibility laid down in the charge. So the testimony was sufficient to justify the finding by the jury of deliberation and premeditation. It showed the absence of impulse, deliberate intention, reflection and determination, and a selection and preparation of the means of death. We cannot interfere.

The judgment of conviction should be affirmed.

PRATT, J., concurred in the result.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Judgment and conviction affirmed.